IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANA PRICE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 15-715 |
| v. | ) |
| | ) Judge Cathy Bissoon |
| GATOR LAUREL PARTNERS, LLLP, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Pending before the Court is a motion for partial summary judgment (**Doc. 70**) filed on behalf of Defendants Wavie & Janes Emporium, LLC, Jeff Wallace, and Terry Bodes (collectively, the "WJE Defendants" or "Cross-claim Defendants") relative to the cross-claim asserted by Defendants Gator Laurel Partners, LLLP, Gator Laurel Flea Market, LLC, and Gator Laurel Mall, LLC (collectively, the "GL Defendants" or "Cross-claim Plaintiffs"). For the reasons that follow, the WJE Defendants' motion will be GRANTED in part and DENIED in part.

### A. BACKGROUND[1]

Defendant Gator Laurel Partners, LLLP ("GL Partners") is a Florida limited liability limited partnership. Doc. 1, ¶5; Doc. 25, ¶5. Defendant Gator Laurel Mall, LLC ("GL Mall") is a Florida limited liability company that, at times pertinent hereto, was the general partner of GL

---

[1] The following facts are undisputed, unless otherwise indicated. Where disputed, the facts are presented in the light most favorable to the GL Defendants, the non-movants.

1

Partners. Doc. 1, ¶7; Doc. 25, ¶7. Defendant Gator Laurel Flea Market, LLC ("GL Flea Market") also is a Florida limited liability company. Doc. 1, ¶6; Doc. 25, ¶6.

Since August 1, 2008, GL Partners has owned property known as the Laurel Mall, located in Fayette County, Pennsylvania. Doc. 78-4 at 3-4; Doc. 1, ¶13; Doc. 25, ¶13. The Laurel Mall is a flea market consisting of approximately 190 booths. Doc. 71 ¶1; Doc. 77, ¶1. At times relevant to this litigation, GL Partners, GL Flea Market and/or GL Mall operated, managed and/or maintained the Laurel Mall property. Doc. 1, ¶13; Doc. 25, ¶13.

Defendants Jeff Wallace ("Wallace") and Terry Bodes ("Bodes") are residents of Fayette County, Pennsylvania. Doc. 1, ¶¶ 9-10; Doc. 40, ¶¶9-10. On November 12, 2009, Bodes filed an application with the Pennsylvania Department of State to register a retail store business under the fictitious name "Trail Town Peddlers." Doc. 73-4 at 2-3; Doc. 71, ¶5; Doc. 77, ¶5. The application was granted on November 16, 2009 and, thereafter, Wallace and Bodes conducted business at the Laurel Mall under the name "Trail Town Peddlers." Doc. 71, ¶5; Doc. 77, ¶¶5, 11.

Defendant Wavie & Janes Emporium, LLC ("WJE"), is a Pennsylvania limited liability company that was formed on May 29, 2013. Doc. 73-4 at 4. Bodes is WJE's sole member and Wallace is an operator/employee of the company. Doc. 77 at ¶12; Bodes Dep. at 9:2-15, 10:18-11:12 (Doc. 78-9).

On June 8, 2013, while Plaintiffs Diana and Charles Price ("Plaintiffs") were walking in the corridor of the Laurel Mall, Diana Price (hereafter, at times, "Diana") rounded a pillar and tripped over a wooden pallet that was located just outside a store allegedly bearing the signage "Wavie & Janes Emporium." Doc. 71, ¶10; Doc. 77, ¶10; D. Price Dep. at 17:3-20, 20:17-21 (Doc. 73-7); C. Price Dep. at 12:2-25, 18:9-17 (Doc. 78-7). Immediately after Diana tripped and

2

fell, a young male came out of Wavie & Janes Emporium, grabbed the wooden pallet, and took it back inside the store. D. Price Dep. at 20:12-21; C. Price Dep. at 27:2-16, 28:5-19. Upon picking up the pallet, the young male allegedly remarked, "[T]his thing has been here for a month and nobody else has ever tripped over it." C. Price Dep. at 27:13-16.

Plaintiffs later filed suit against the GL Defendants and the WJE Defendants for damages allegedly sustained by Plaintiffs as a result of Diana's fall. The complaint (Doc. 1) set forth separate claims against the GL Defendants and the WJE Defendants both for negligence and for loss of consortium. It also included a claim against Bodes and Wallace in their individual capacities, based on the theory that WJE is the "alter ego" of "either or both of the Defendants, Terry Bodes and Jeff Wallace." Doc. 1, ¶48.[2]

On October 2, 2015, the GL Defendants answered the complaint and asserted cross-claims against the WJE Defendants for indemnification and contribution. See Doc. 25. In their answer to the cross-claims, the WJE Defendants state, among other things, that WJE never operated a store at the Laurel Mall. Doc. 40 at 20 ("First Affirmative Defense"). The WJE Defendants acknowledge that Wallace and Bodes previously rented store space from the GL Defendants at the Laurel Mall using the trade name "Trail Town Peddlers"; however, they maintain that this business ceased to exist – and that Wallace and Bodes vacated the leasehold – no later than April 2013. Id. at 20-21 ("Second Affirmative Defense" and "Third Affirmative Defense"). Consequently, the WJE Defendants contend that Plaintiffs and the GL Defendants

---

[2] According to the WJE Defendants, "[t]he Plaintiffs have agreed to dismiss Jeff Wallace and Terry Bodes in their individual capacities as the protections of the Limited Liability Company inure to the benefit of the individual defendants and discovery has revealed that no cognizable claim for 'Piercing the Corporate Veil' has been made by the Plaintiffs." WJE Defs.' Br. Supp. Mot. Summ. J. at 4, Doc. 72. Because the Court is unable to verify the accuracy of the WJE Defendants' representation from the public docket, the Court will not presently credit the representation or allow it to inform any aspect of the analysis set forth herein.

3

have sued the wrong parties. Id. at 21 ("Third Affirmative Defense"). They deny that the GL Defendants have any basis, either contractually or under common law, for obtaining contribution or indemnification from them. Id. at 21 ("Fifth Affirmative Defense").

In February 2017, the WJE Defendants filed the pending motion for summary judgment and supporting materials relative to the GL Defendants' cross-claim. Doc. Nos. 70-73. In their motion, the WJE Defendants challenge only the GL Defendants' claims for indemnification. See Doc. 70, ¶¶4-7.[3] They argue that the GL Defendants have no right to obtain indemnification, either contractually or under common law. Doc. Nos. 70 and 72.

The GL Defendants filed their opposition materials on March 24, 2017. Doc. Nos. 74-78. Based on these filings, the motion of the WJE Defendants is ripe for adjudication.

B. <u>ANALYSIS</u>[4]

"[U]nder Pennsylvania law,[5] indemnity is available only (1) where there is an express contract to indemnify, or (2) where the party seeking indemnity is vicariously or secondarily

---

[3] The WJE Defendants make no mention of the cross-claim for contribution, nor do they acknowledge a distinction between the two theories. Because the parties have not joined issue on the sufficiency of the GL Defendants' contribution claim, the Court will not address the matter at this juncture.

[4] Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. See <u>Sovereign Bank v. BJ's Wholesale Club, Inc.</u>, 533 F.3d 162, 172 (3d Cir. 2008) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). In ruling on the pending motion for summary judgment, the Court must view the facts, and any reasonable inferences arising therefrom, in the light most favorable to the non-moving party. See <u>Moody v. Atlantic City Bd. of Educ</u>., 2017 WL 3881957, at *1 n.1 (3d Cir. Sept. 6, 2017) (citing <u>Hugh v. Butler Cty. Family YMCA</u>, 418 F.3d 265, 266-67 (3d Cir. 2005)).

[5] As a federal court sitting in diversity, this Court must apply the substantive law of the state in which it sits, <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938), including its choice of law rules, <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). In this case, the parties

4

liable for the indemnitor's acts.'" Bank v. City of Phila., 991 F. Supp. 2d 523, 530 (E.D. Pa. 2014) (quoting Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 448 (3d Cir. 2000)) (additional internal quotation marks and citations omitted). "If there is no express contract to indemnify, then the party seeking indemnity must rely on the second option—common law indemnification." Id. (quoting Allegheny Gen. Hosp., 228 F.3d at 448). A right of common law indemnification arises when a defendant's liability "'arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay for the act or omission of a third party.'" Id. (quoting Morris v. Lenihan, 192 F.R.D. 484, 489 (E.D. Pa. 2000)). "The common law right of indemnity 'enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of

---

have implicitly agreed that Pennsylvania law governs the disputed cross-claim, as they discuss only Pennsylvania law in their respective briefs. Accordingly, the Court need not engage in a choice-of-law analysis. See Schiavone Constr. Co. v. Time, Inc., 735 F.2d 94, 96 (3d Cir. 1984)) (where parties implicitly agreed that New Jersey law governed their defamation case, district court applied New Jersey law in its analysis, and New Jersey had an interest in the outcome of the litigation, Court of Appeals found "no cause sua sponte to challenge that choice of law"); 84 Lumber Co., L.P. v. Bryan Const. Co., 2011 WL 666209, at *5 (W.D. Pa. Feb.14, 2011) ("In this case, the parties do not dispute that Pennsylvania law applies to this case, and the Court need not engage in a choice of law analysis."); Tyler v. King, 496 A.2d 16, 21 (Pa. Super. Ct. 1985) ("[P]arties may bind themselves, even by a statement made in court, on matters relating to individual rights and obligations, so long as their stipulations do not affect the court's jurisdiction or due order of business.").

Regardless, the Court finds no reason to apply different law to the facts of this case. As a general matter, "Pennsylvania courts give effect to choice of law provisions when the state selected enjoys a substantial relationship to the parties or the transaction and the application of the law is not contrary to the public policy of another state with a stronger interest in the transaction." Verizon Commc'ns Inc. v. Pizzirani, 462 F. Supp. 2d 648, 655 (E.D. Pa. 2006) (citing Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994)) (footnote omitted). In this case, Pennsylvania has a substantial connection to the parties and the underlying events because Diana Price's accident occurred in Pennsylvania, and both the GL Defendants and the WJE Defendants conducted business here. Neither the GL Defendants nor the WJE Defendants have alleged that the application of Pennsylvania law would contravene the public policy of another state having a stronger interest in this case. Accordingly, the disputed cross-claim will be analyzed under Pennsylvania law.

another, and for which he himself is only secondarily liable.'" Id. (quoting Morris, 192 F.R.D. at 489).

Here, the WJE Defendants appear to concede the existence of genuine disputes about whether they operated a store at the Laurel Mall under the trade name "Waivie & Janes Emporium" at the time of Diana Price's trip and fall and whether negligence can be vicariously imputed to WJE by virtue of actions taken by the store's employees. The evidence shows that WJE was formally organized as a limited liability company on May 29, 2013, shortly before the date of Diana Price's accident. Both Plaintiffs testified that they observed WJE signage in place, and WJE employees present in the store, on the day in question. Plaintiffs' testimony supports the additional inference that the obstacle on which Diana tripped – *i.e.*, an object she described as a "wooden pallet" – was the property of WJE and had been situated just outside of the store at the time of Diana's fall. In light of these facts, a jury could reasonably conclude that: (i) the WJE Defendants maintained a presence at the Laurel Mall under the trade name "Waivie & Janes Emporium" during the time frame in question, and (ii) WJE employees were responsible for placing the wooden pallet in the location where Diana Price tripped.

The question becomes whether the GL Defendants have established any basis for their indemnification claim against the WJE Defendants. In this case, the GL Defendants' contractual indemnification claim is predicated entirely upon a "license agreement" that was purportedly executed for the benefit of GL Partners by Wallace in his capacity as "President" of an unidentified entity. See Doc. 73-2. Paragraph 10 of the agreement sets forth an "indemnification/ hold harmless" clause, which states:

> Licensee hereby agrees to indemnify, defend and hold harmless the Licensor, its owner, partners, authorized agents, managing agent, mortgagee, contractors, and each tenant and licensee of the Shopping Center from and against any and all claims (including personal injuries and death), damages, injuries, actions, costs,

6

> fees, penalties, interest or expenses of any kind or nature, whatsoever, and/or other expenses (including reasonable attorney's fees) and cost due to or arising out of or in connection with the use or occupancy of the Premises, the Shopping Center, or any part or facility thereof by the Licensee, his agents, members, partners, associates, contractors, servants, invitees, and employees.

Doc. 73-2 at 9, ¶10.

For several reasons, the Court finds the licensing agreement ineffectual in terms of transferring a duty of indemnification to any of the WJE Defendants. To begin, it is clear that Wallace could not have executed the purported licensing agreement on behalf of WJE, since the document was signed on November 12, 2008 and WJE did not exist as a legal entity until May 29, 2013. The agreement, by its own terms, is "personal to Licensee and may not be transferred or assigned by Licensee . . . ." Doc. 73-2 at 10, ¶14. Indeed, the GL Defendants appear to concede that the licensing agreement has no binding effect on WJE because it was not a party to the agreement.

Additionally, the Court finds that the "licensing agreement" cannot support a contractual right of indemnification against Bodes or Wallace because it is unenforceable under basic tenets of Pennsylvania contract law. "The elements of an enforceable contract under Pennsylvania law are: (1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently definite terms, and (3) an agreement supported by adequate consideration." Szymanski v. Sacchetta, 2012 WL 246249, at *4 (E.D. Pa. Jan. 26, 2012) (citing Johnston the Florist, Inc. v. TEDCO Constr. Corp., 657 A.2d 511, 516 (Pa. Super. Ct. 1995)). For purposes of evaluating whether sufficiently definite contractual terms exist, Pennsylvania courts follow the Restatement (Second) of Contracts. See Reed v. Pittsburgh Bd. of Pub. Educ., 862 A.2d 131, 135 (Pa. Commw. Ct. 2004). Section 33 of the Restatement provides that:

> (1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

> (2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.
>
> ([3]) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.

Restatement (Second) of Contracts § 33 (1981). "'[T]ime or manner of performance, and price or consideration are essential terms of an alleged bargain, and must be supplied with sufficient definiteness for a contract to be enforceable.'" Hearbest, Inc. v. Adecco USA, 2014 WL 7183478, at *5 (W.D. Pa. Dec. 16, 2014) (quoting Great N. Ins. Co. v. ADT Sec. Servs., Inc., 517 F. Supp. 2d 723, 736 (W.D. Pa. 2007)); see Lombardo v. Gasparini Excavating Co., 123 A.2d 663, 666 (Pa. 1956) (essential terms of a contract include, inter alia, the "time or manner of performance, price to be paid, or the like.").

In this case, the essential terms of the licensing agreement are insufficiently clear, and the document does not evidence the parties' intention to enter into an enforceable contract. For one thing, the agreement fails to specify the entity on whose behalf Wallace, as "President," supposedly executed the document. And even if the Court assumes that "Trail Town Peddlers" – or Wallace himself -- is the "Licensee," the agreement still fails to meet the standard of enforceability because it does not identify the "premises" being "licensed," the term of the licensing period, the price to be paid as a "license fee," or the "permitted use" of the premises. Under these circumstances, the written agreement provides an insufficient basis for determining either the existence of a breach or the appropriate remedy. On its face, the document cannot reasonably be viewed as manifesting an objective contractual intent on the part of Wallace, "Trail Town Peddlers," or any other entity.

Apart from these defects, the "licensing agreement" fails to satisfy Pennsylvania's statute of frauds, which provides that any lease of real property for a term of more than three years must

be made in writing and must be signed by both of the contracting parties. See 68 Pa. Stat. §250.202. Although the "licensing agreement" bears the signature of Wallace, as "President" of an undisclosed "Licensee," it is not signed by any agent of GL Partners, the purported "Licensor."[6] Thus, even if the agreement were otherwise enforceable as to its substantive terms, it would not be enforceable beyond the three-year period after it was signed by Wallace. See Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 129 (3d Cir. 1997) (court noting that, although "[t]he statute of frauds does not void contracts relating to land that fail to comply with its requirements," it "renders unenforceable the durational term of those contracts"). That three-year period terminated well before the date on which Diana Price was injured.

In sum, even if WJE actually occupied space in the Laurel Mall on June 8, 2013, and even if WJE, through its agents, was vicariously responsible for the placement of the obstacle that caused Diana Price's fall, the 2008 "license agreement" has no legal effect vis-a-vis the WJE Defendants in terms of providing the GL Defendants a contractual right of indemnification. Accordingly, to the extent that the GL Defendants' indemnification claim is predicated on provisions in the licensing agreement, the claim fails as a matter of law.

Of course, under Pennsylvania law, parties can also be bound under the terms of an oral contract. "In the case of oral contracts, courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent." Legendary Art, LLC v. Godard, 888 F. Supp. 2d 577, 585 (E.D. Pa. 2012) (internal quotation marks and citation

---

[6] In their brief, the GL Defendants argue that "[t]he Agreement . . . contains a counterparts clause indicating that the agreement may be executed in several counter parts, each of [which] shall be deemed an original, therefore the page containing the Lessor's signature may be shown on another counterpart." GL Defs.' Mem. Opp. Mot. Summ. J. at 4, Doc. 75. This speculative assertion – that a signed counterpart to the agreement may exist somewhere – does not amount to a genuinely disputed issue concerning the existence of a fully executed licensing agreement.

9

omitted). Here, the GL Defendants contend that "the mere fact that the parties maintained [their] business relationship for 4-1/2 years creates a very long history or [c]ourse of [p]erformance, from which meaning to the terms of the agreement may be proved during testimony at the time of trial." GL Defs.' Mem. Opp. Mot. Summ. J. at 4, Doc. 75.

While this may be true, it is the GL Defendants' burden, at this stage of the proceedings, to produce evidence indicative of a genuinely disputed issue concerning its right to contractual indemnification. As noted, Pennsylvania requires the existence of an express contractual right to indemnity. See Bank, 991 F. Supp. 2d at 530 (noting that, under Pennsylvania law, "indemnity is available only (1) where there is an express contract to indemnify, or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts") (internal quotation marks and citation omitted). Moreover, "[a]n indemnification agreement 'must be construed strictly and the contract must state the intention of the parties with the greatest particularity.'" Krueger Assocs., Inc. v. ADT Sec. Sys., 11 F. Supp. 2d 634, 636 (E.D. Pa. 1998) (quoting Valhal Corp. v. Sullivan Assoc., Inc., 44 F.3d 195, 202 (3d Cir.1995)), aff'd sub nom. Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Pa., 247 F.3d 61 (3d Cir. 2001). "Any ambiguity in the contract must be construed against the party seeking indemnification." Id. (citing Valhal Corp., 44 F.3d at 202). In this case, there is no evidence before the Court to suggest that the parties engaged in a course of dealing pursuant to which the WJE Defendants expressly agreed to indemnify GL Partners under the type of circumstances that are present here.

In sum, the Court finds that there are no genuinely disputed issues of material fact relative to the GL Defendants' contractual indemnification claim. As a matter of law, the GL Defendants have established no basis in contract for obtaining indemnification from the WJE Defendants, and summary judgment will therefore be entered on that aspect of the cross-claim.

Absent a contractual right of indemnification, the GL Defendants must rely on a common law right of indemnification. "'[T]he common law right of indemnity is not a fault sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor.'" Holbrook v. Woodham, 2009 WL 365681, at *9 (W.D. Pa. Feb. 13, 2009) (quoting Sirianni v. Nugent Bros., Inc., 506 A.2d 868, 871 (Pa.1986)). "'Rather, it is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss.'" Id. (quoting Sirianni, supra).

In their motion, the WJE Defendants contend that no facts have been presented that would render them liable for indemnification at common law. See Doc. 70, ¶7(b). Their brief does not expound on this point, except to note the well-established rule in Pennsylvania that:

> where the owner of real estate leases various parts thereof to several tenants, but retains possession and control of the common passage-ways and aisles which are to be used by business invitees of the various tenants, the obligation of keeping the common aisles safe for the business invitees is imposed upon the landlord and not upon the tenants, in the absence of a contrary provision in the lease or leases.

WJE Defs.' Br. Supp. Mot. Summ. J. at 6, Doc. 72 (quoting Leary v. Lawrence Sales Corp., 275 A.2d 32, 34 (Pa. 1971)). Under Pennsylvania law, the question of liability is premised primarily on possession and control, as opposed to simply ownership. Stuski v. Phila. Auth. for Indus. Dev., 162 A.3d 1196, 1203 (Pa. Commw. Ct. 2017).

Here, the Court is not persuaded that the foregoing rule absolutely bars the GL Defendants' common law indemnity claim because the record, at least in its present state, supplies a reasonable basis for finding only secondary liability on the part of GL Partners. Under Pennsylvania law, "secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct

11

a defect or remedy a dangerous condition caused by the act of the one primarily responsible." Builder Supply Co. v. McCabe, 77 A.2d 368, 328 (Pa. 1951). Based on the record before the Court, a jury could reasonably infer that agents of WJE created a dangerous condition in the common area of the Laurel Mall, making any liability on the part of the GL Defendants secondary to that of WJE. See Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582, 597 (Pa. 2012) ("The corporation, as principal, assumes the risk of individual agents' negligence under the theory of vicarious liability.") (citing authority).

Moreover, genuine issues of fact exist on this record as to whether the GL Defendants actually retained control over the area in which Diana Price fell. Under Pennsylvania law, the question of control over leased premises is a factual one ordinarily reserved to the jury. Fitzpatrick v. Consol. Rail Corp., 1991 WL 61114, at *3 (E.D. Pa. Apr. 16, 1991) (citing Farmers Export Co., Inc. v. Energy Terminals, Inc., 673 F. Supp. 715, 718 (E.D.Pa.1987). See also Pratt v. Scott Enters., 218 A.2d 795, 797-98 (Pa. 1966) (whether landlord was in control over area of plaintiff's injury was "strictly a question of fact" that was properly submitted to the jury); Pierce v. Phila. Housing Auth., 486 A.2d 1004, 1007-08 (Pa. Super. Ct. 1985) (language in lease agreement, together with other evidence in the record, supported an inference of defendant's possession and control over stairway on which plaintiff was injured and corresponding duty to keep the stairways in good repair, making directed verdict in favor of the defendant inappropriate). The wording of a lease agreement is a significant factor in resolving the question of control. Fitzpatrick, 1991 WL 61114, at *3 (citing Farmers Export Co., Inc., 673 F. Supp. at 718). Accordingly, covenants stipulating that one party shall repair or maintain the premises or maintain personal possession are "strong indicia of control." Id.

For the reasons discussed, the Court has determined that the 2008 licensing agreement signed by Wallace is unenforceable as against the WJE Defendants. Nevertheless, the record suggests that, at the time of Diana Price's accident, WJE and GL Partners were operating under some type of oral or implied lease agreement. Unfortunately, the terms of that agreement are not clear because there is scant evidence in the record concerning the parties' course of conduct as it relates to possession and control over the area where Diana Price tripped and fell. While there is evidence indicating that the GL Defendants hired an independent contractor to generally maintain the common areas of the mall, see Doc. 78-4 at 5, there is also evidence to suggest that that the obstacle on which Diana Price tripped had remained in place for as long as a month prior to her accident, suggesting that WJE may have exercised some degree of control over the area immediately in front of its store. See C. Price Dep. at 27:13-16. There also is some ambiguity in the record concerning the precise description and location of the obstacle in question. One fact witness, Gail Haug, described the obstacle as a "shepherd's hook" and testified that it was placed partly inside the WJE Defendants' store, protruding into the corridor. See Haug Dep. at 54:9-21, Doc. 78-6. In short, because the evidence gives rise to unresolved factual issues concerning the precise location of the obstacle and the parties' respective duties, if any, to Diana Price, the Court cannot resolve the common law indemnity claim as a matter of law, at least to the extent the claim is directed against WJE.

Insofar as the common law indemnity claim is directed at Bodes and Wallace personally, the WJE Defendants contend that summary judgment is appropriate because WJE's structure as a limited liability company protects Bodes and Wallace from individual liability and no grounds exist for piercing the company's "corporate veil." This argument is well-taken.

Under Pennsylvania law, WJE's structure as a limited liability company generally shields Wallace and Bodes from personal liability. See 15 Pa. Cons. Stat. Ann. §8818(a) ("A limited liability company is an entity distinct from its member or members."); Id. §8834(a) ("A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation or other liability of the company solely by reason of being or acting as a member or manager."); see also Commwealth Dep't of Envtl. Protection v. Trainer Custom Chem. LLC, 204 F. Supp. 3d 814, 826 (E.D. Pa. 2016) ("As a general rule, members of a limited liability company or shareholders of corporations are 'not personally liable to perform corporate obligations.'") (quoting Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir. 1994)) (internal footnote omitted). Because there is no indication in the record that either Wallace or Bodes were personally involved in placing the "pallet" in the location where Diana Price tripped, neither Wallace nor Bodes can be held liable under a "participation theory" of negligence. See Jackson v. Burlington Coat Factory, 2017 WL 3534983, at *3 (E.D. Pa. Aug. 17, 2017) (noting Pennsylvania's recognition of the "participation theory," pursuant to which "a corporate officer/manager can be held personally liable for participating in the tortious activity of the company, but only where the manager 'specifically direct[s] the particular act to be done or participate[s], or cooperate[s] therein'") (quoting Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983))(alterations in the original); Get-Er-Done Drilling, Inc. v. US Crossing Unlimited, LLC, 2017 WL 2936745, at *6 (W.D. Pa. July 10, 2017) (discussing Pennsylvania's participation theory and observing that it applies in the context of limited liability companies).

Nor have the GL Defendants pointed to any evidence that would support piercing WJE's "corporate veil."[7] In Pennsylvania, there is a strong presumption against piercing the corporate veil. See Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995) ("[T]he general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person."). Nonetheless, there are certain situations where piercing the veil is countenanced in Pennsylvania – namely, when it is determined that "'the corporation is an artifice and a sham to execute illegitimate purposes and [an] abuse of the corporate fiction and immunity that it carries.'" Kaplan, 19 F.3d at 1521 (quoting Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc., 758 F. Supp. 1054, 1058 (W.D. Pa. 1990)) (alteration in the original). No clear test exists for determining when piercing the corporate veil is appropriate, although certain factors are relevant, such as undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetuate a fraud. See Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC., 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004). "[A] court inquires, inter alia, whether corporate formalities were observed and corporate records kept, whether officers and directors other than the dominant shareholder actually function, and whether the dominant shareholder has used the assets of the corporation as if they were his or her own." 12 Summ. Pa. Jur. 2d Business Relationships § 1:27 (2d ed.) (citing Fletcher-Harlee Corp. v. Szymanski, 936 A.2d 87 (Pa. Super. Ct. 2007), appeal denied, 956 A.2d 435 (2008) and cert. denied, 129 S. Ct. 1581 (2009)). "The corporate form will be disregarded only when the entity is used to defeat public

---

[7] "Pennsylvania courts have found that the veil of an LLC may be pierced to the same degree as that of a corporation." Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co., 700 F. Supp. 2d 720, 736 (W.D. Pa. 2010) (citing Advanced Tel. Sys. v. Com–Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1281, n. 11 (Pa. Super. Ct. 2004)); Schwab v. McDonald (In re LMcD, LLC), 405 B.R. 555, 560 (Bankr. M.D. Pa. 2009).

15

convenience, justify wrong, protect fraud, or defend crime." Mosaica Educ., Inc. v. Pa. Prevailing Wage Appeals Bd., 925 A.2d 176, 184 (Pa. Commw. Ct. 2007) (citing First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. Ct. 1991)).

Here, the GL Defendants have offered no persuasive justification for piercing WJE's "corporate veil." Their only argument is that the WJE Defendants are, in effect, attempting to nullify the indemnification clause of the 2008 licensing agreement without providing the GL Defendants notice or the opportunity to protect their interests. According to the GL Defendants, "[s]uch a position unjustly deprives [them] of the rights and protections mutually agreed to by Jeff Wallace as President and partner in Trial Town Peddlers with Mr. Bodes and who is admittedly and simultaneously, an employee/operator of Waive & Jane's Emporium LLC." GL Defs.' Mem. Opp. Mot. Summ. J. at 7, Doc. 75. As previously discussed, however, the Court has determined that the 2008 "licensing agreement" lacks the indicia of an enforceable contract. Because Pennsylvania recognizes a strong presumption against piercing WJE's corporate veil, and because the GL Defendants have failed to adduce evidence that could support reasonable grounds for doing so, the Court will grant the WJE's motion for summary judgment as it relates to the indemnity claims against Bodes and Wallace in their individual capacities.

## II. ORDER

For the reasons stated above, the W&J Defendants' Motion for Summary Judgment Relative to the Cross Claim filed by the Gator Laurel Defendants (**Doc. 70**) is **GRANTED** insofar as it relates to the GL Defendants' contractual indemnity claim against the WJE Defendants and the common law indemnity claims against Bodes and Wallace individually. The motion will be **DENIED** insofar as it relates to the GL Defendants' common law indemnity claim against WJE.

16

IT IS SO ORDERED.

September 25, 2017                                        s/Cathy Bissoon
                                                          Cathy Bissoon
                                                          United States District Judge

cc (via ECF email notification):

All Counsel of Record